IN THE SUPREME COURT OF THE STATE OF DELAWARE

GERRY MOTT and DAWN MOTT, §
§ No. 155, 2019
  Defendants Below, §
  Appellants, § Court Below—Superior Court
§ of the State of Delaware
  v. §
§
THE BANK OF NEW YORK § C.A. No. S17L-05-021
MELLON f/k/a The Bank of New §
York as successor to JPMorgan Chase §
Bank, N.A., as Trustee for the benefit §
of the Certificateholders of Popular §
ABS, Inc. Mortgage Pass-Through §
Certificates Series 2006-C, §
§
  Plaintiff Below, Appellee. §
§
§

Submitted: September 6, 2019
Decided:  October 2, 2019

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## **O R D E R**

After consideration of the parties' briefs and the record in this case, it appears to the Court that:

(1) In this mortgage foreclosure action, the appellants, Gerry and Dawn Mott, filed this appeal from an order of the Superior Court granting summary judgment to the plaintiff-appellee, The Bank of New York Mellon f/k/a The Bank of New York as successor to JPMorgan Chase Bank, N.A., as Trustee for the benefit

of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-C (the "Bank"). After careful consideration of the parties' submissions and the record on appeal, we affirm the Superior Court's judgment for the reasons stated below.

(2) In May 2006, Mr. Mott executed a promissory note (the "Note") for a $500,000 loan from Equity One, Inc.[1] The Note was secured by a mortgage on a property located in Georgetown, Delaware (the "Mortgage").[2] Both of the Motts signed the Mortgage.[3] The Mortgage provided that if payments were not made on the Note, the mortgagee could, after at least 30 days' notice, accelerate the sum secured by the Mortgage and foreclose on the property.[4] Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Equity One, was the mortgagee under the Mortgage. As discussed in greater detail below, both the Note and the Mortgage eventually were transferred to the Bank.

(3) By late 2007, Mr. Mott had fallen behind on the mortgage payments. In February 2009, MERS filed a mortgage foreclosure action against the Motts. In October 2010, MERS requested that the case be placed on the mortgage foreclosure dormant docket, which was established by Superior Court Administrative Directive

---

[1] Appendix to Answering Brief, at B-19-22.
[2] *Id.* at B-1-18.
[3] *Id.* at B-16.
[4] *Id.* at B-14.

2008-3 in response to the substantial uptick in mortgage foreclosure complaints that occurred in 2008. In November 2012, the Superior Court dismissed the MERS complaint in accordance with Administrative Directive 2008-3 because MERS had not taken any action in the case in more than twenty-four months.

(4) In April 2007, the Motts filed a petition under Chapter 13 of the United States Bankruptcy Code. The Bankruptcy Court entered a discharge order in February 2012.[5] It appears that the parties agree that the bankruptcy discharge eliminated any personal liability of the Motts for amounts due under the Note.

(5) On August 5, 2014, Ocwen Loan Servicing, LLC, which by that time was the servicer of the loan, sent Mr. Mott a notice of default.[6] The notice provided until September 4, 2014 for Mr. Mott to bring the loan current and indicated that failure to do so might result in the initiation of foreclosure proceedings. The Motts do not dispute that they have not made the mortgage payments since 2007.

(6) In May 2017, the Bank filed an *in rem*, *scire facias* action seeking to foreclose on the property. Counsel for the Motts filed two motions to dismiss in which they argued, among other things, that the Bank lacked standing to prosecute the action, the mortgage was unenforceable because of alleged improprieties at the time of closing, and the Bank had not actually participated in the mandatory

---

[5] Discharge of Debtor After Completion of Chapter 13 Plan, *In re Mott*, No. 07-10434-BLS (Bankr. D. Del. Feb. 7, 2012).

[6] Appendix to Answering Brief, at B-36-42.

foreclosure mediation because only Ocwen, and not the Bank, had a representative present at the mediation. The Superior Court denied the motions to dismiss.

(7) After the Motts answered the complaint, the Bank moved for summary judgment. The Motts' counsel then moved to withdraw as counsel because the Motts could no longer pay for his services, and the Superior Court granted the motion. The Superior Court held a hearing on the motion for summary judgment on March 15, 2019. At the conclusion of the hearing, the court granted the motion for summary judgment. This appeal followed.

(8) We review the Superior Court's grant or denial of a motion for summary judgment *de novo*.[7] On a motion for summary judgment, the movant must demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.[8] "When the evidence shows no genuine issues of material fact in dispute, the burden shifts to the non-moving party to demonstrate that there are genuine issues of material fact in dispute that must be resolved at trial."[9]

(9) In a mortgage foreclosure action, a mortgagor must establish why the mortgaged property should not be seized and sold to pay the mortgagor's

---

[7] *ConAgra Foods Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del. 2011); *Pickens v. CitiMortgage, Inc.*, 2016 WL 1374998 (Del. Apr. 4, 2016).
[8] Del. Super. Ct. Civ. R. 56; *Pickens*, 2016 WL 1374998, at *1.
[9] *Grabowski v. Mangier*, 938 A.2d 637, 641 (Del. 2007).

4

indebtedness.[10]  Defenses in a foreclosure action are limited to payment, satisfaction, or a plea in avoidance of the mortgage.[11]

> The phrase "plea in avoidance" has sometimes been described as referring to a plea relating "to the validity or illegality of the mortgage documents," . . . but a more apposite description of "plea in avoidance" [is that it refers] to the common law plea known as confession and avoidance.  "Such plea admits the allegations of the complaint but asserts matter which destroys the effect of the allegations and defeats the plaintiff's right."  "[T]he allegation 'in avoidance' must relate to the subject matter of the complaint."  Examples of pleas in confession and avoidance are "act of God, assignment of cause of action, conditional liability, discharge, duress, exception or proviso of statute, forfeiture, fraud, illegality of transaction, nonperformance of condition precedent, ratification, unjust enrichment and waiver."[12]

(10)  The Motts do not assert payment or satisfaction.  Rather, their arguments may be summarized as follows:  (i) the Bank lacks standing to foreclose because it has not demonstrated that it holds both the Mortgage and the Note; (ii) no attorney was present at the closing; (iii) the Bank is not represented by counsel in this litigation and is not an actual participant in the litigation; (iv) the Bank did not timely comply with this Court's rule governing disclosure of corporate affiliations; (v) the Bank impermissibly moved for summary judgment before the Motts rejected a final loss mitigation offer; (vi) the Bank has not acted in good faith or dealt fairly with the Motts, or it has unclean hands; and (vii) the foreclosure will confer an unfair

---

[10] *McCafferty v. Wells Fargo Bank, N.A.*, 2014 WL 7010781, at *2 (Del. Dec. 8, 2014).
[11] *Shrewsbury v. Bank of New York Mellon*, 160 A.3d 471, 475 (Del. 2017).
[12] *Id.* (footnotes citing *Gordy v. Preform Building Components, Inc.*, 310 A.2d 893 (Del. Super. Ct. 1973), omitted) (third alteration in original).

windfall on the Bank in the form of a tax benefit. For the reasons discussed below, we conclude that none of the Motts' arguments establishes a genuine issue of material fact in dispute, and the Superior Court therefore did not err by granting the Bank's motion for summary judgment.

(11) First, the Motts assert, on various grounds, that the Bank cannot foreclose because it has not established that it holds both the Mortgage and the Note, as required under Delaware law.[13] The record reflects that Equity One, the initial lender, endorsed the Note to Popular ABS, Inc. and that Popular ABS endorsed the Note to JPMorgan Chase Bank as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-C ("JPMorgan Chase").[14] JPMorgan Chase then transferred the Note to the Bank by an allonge dated September 30, 2010.[15] The record also reflects that MERS, the initial mortgagee, assigned the Mortgage to the Bank by a Corporation Assignment of Mortgage dated August 31, 2010.[16]

(12) Thus, on their face, the documents in the record indicate that the Bank holds both the Mortgage and the Note, and that it held them at the time that it initiated this foreclosure action in 2017. The Motts' various arguments to the contrary do not

---

[13] Opening Brief, Arguments 3, 4, 5, 6, 7, 8, 9, 11, 17. *See generally Shrewsbury*, 160 A.3d 471 (holding that "a mortgage holder must be a party entitled to enforce the obligation, mortgage money, which the mortgage secures in order to foreclose on the mortgage").
[14] Appendix to Opening Brief, at A-305.
[15] Appendix to Answering Brief, at B-23.
[16] *Id.* at B-24.

create a genuine issue of material fact in dispute. The Bank is not required to produce the original note in order to foreclose,[17] and Ocwen's failure to attach the allonge to the "Lost Note Affidavit" that Ocwen prepared in 2016 does not raise a genuine issue about a material fact, because a copy of the allonge, dated September 30, 2010, is in the record. Whether MERS had "possession or authority to assign the Note"[18] is not a genuine issue of material fact because MERS assigned the Mortgage, not the Note. Similarly, whether Ocwen was "ever a person in possession"[19] of the Note in accordance with 6 *Del. C.* § 3-309 is not a genuine issue of material fact because Ocwen is not the party seeking enforcement of the Note.[20]

(13) Second, the Motts argue that the Mortgage and the Note are not enforceable because no attorney was present at the closing.[21] Although the Motts assert that Equity One's closing agent provided unsatisfactory, or even erroneous, answers to questions that they asked at closing, they admit that they proceeded with settlement anyway. And they do not contend that anyone prevented them from retaining counsel in order to obtain legal advice on the terms of the loan. Nor do they contend that they did not understand that foreclosure could result from their

---

[17] *Cf. Coppedge v. US Bank Nat'l Ass'n*, 2014 WL 5784006, at *1 (Del. Nov. 5, 2014) ("The Coppedges also fail to cite any relevant authority in support of their contentions that . . . the Bank had to produce an original, wet ink note in order to foreclose on the Property.").
[18] Opening Brief at 14.
[19] Opening Brief, Argument 16.
[20] *See* 6 *Del. C.* § 3-309 (establishing the circumstances under which a person not in possession of a negotiable instrument is entitled to enforce the instrument).
[21] Opening Brief, Argument 1.

failure to make mortgage payments. In these circumstances, there is no basis to invalidate the mortgage simply because no attorney appeared at the settlement.[22]

(14) Third, the Motts argue that the Superior Court's judgment should be reversed because the Bank is not represented by counsel in this litigation.[23] In the Final Mediation Record that was submitted to the Superior Court, the mediator stated that Ocwen appeared at the mediation as the servicer for the Bank, that the Bank was "not at [the] mediation directly," and that "Plaintiff's counsel's client is Ocwen." Except in limited circumstances that are not applicable here, a corporation or other business entity may proceed in the Delaware courts only through a duly-licensed attorney.[24] The plaintiff-appellee in this case is the Bank. Daniel Conway of Orlans PC and James Carignan of Duane Morris LLP, both of whom are members of the Delaware bar, have entered appearances on behalf of the Bank in this appeal. Mr. Conway and Melanie Thompson, who is also a Delaware attorney, entered appearances on behalf of the Bank in the Superior Court. Mr. Conway has also signed pleadings, briefs, and affidavits stating that he is the "attorney for Plaintiff." These Delaware attorneys therefore have represented to this Court and the Superior

---

[22] *See Manley v. MAS Assocs., LLC*, 2009 WL 378172, at *3 (Del. Feb. 17, 2009) (rejecting borrower's claim that order granting summary judgment in a foreclosure action should be reversed based on the absence of a Delaware attorney at closing, because the borrower received the full benefit of the loan and understood that not paying his loan would result in foreclosure).

[23] Opening Brief, Arguments 2, 13.

[24] *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 1990 WL 168276 (Del. Sept. 18, 1990).

Court that they represent the Bank, and the Motts have failed to establish a cognizable defense to this foreclosure action on these grounds.[25]

(15) Fourth, the Motts assert that the Bank did not timely comply with this Court's rule governing disclosure of corporate affiliations.[26] This argument does not warrant reversal because it does not fall within the available defenses to a foreclosure action[27] and, in any event, the Bank has since filed the disclosure.

(16) Fifth, the Motts rely on 12 C.F.R. § 1024.41(g) to argue that the Bank prematurely moved for summary judgment, because it filed the motion for summary judgment before the Motts rejected a final loss mitigation offer.[28] Section 1024.41(g) is part of Regulation X, which the federal Bureau of Consumer Financial Protection codified to implement the Real Estate Settlement Procedures Act of 1974 ("RESPA").[29] Among other things, Regulation X prohibits "dual-tracking," which is the "common name for the home financial service industry practice of pursuing a foreclosure action against a delinquent borrower while the borrower is attempting to obtain some loss mitigation option to prevent foreclosure."[30]

---

[25] *See generally Shrewsbury*, 160 A.3d at 475 (recognizing the defenses available in a foreclosure action as payment, satisfaction, or a plea in avoidance of the mortgage).
[26] Opening Brief, Argument 10.
[27] *See Shrewsbury*, 160 A.3d at 475 (discussing the available defenses to foreclosure).
[28] Opening Brief, Argument 12 (citing 12 C.F.R. § 1024.41(g)(2)).
[29] *See Homebuyers Inc. v. Watkins*, 2019 WL 2361760, at *12 (Neb. Ct. App. June 4, 2019) (discussing RESPA and Regulation X).
[30] *Id.*

(17)    Section 1024.41(g) provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless . . . (2) The borrower rejects all loss mitigation options offered by the servicer . . . ."[31]  It is not clear from the record whether or not the Bank failed to comply with Section 1024.41(g), but we conclude that, even if it did, its failure to comply does not warrant reversal of the Superior Court's judgment.  The Motts do not cite any authority for the proposition that a violation of Section 1024.41(g) precludes foreclosure.  Rather, the first sentence of Section 1024.41 provides that a "borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA."[32]  Section 6(f) of RESPA authorizes a borrower to recover damages from "[w]hoever fails to comply with any provision of this section."[33]  "[C]ourts have repeatedly rejected attempts to have a foreclosure sale declared void due to alleged noncompliance with this loan modification regulation."[34]  The Motts' remedy for the Bank's alleged failure to comply with Section 1024.41(g) therefore is not preclusion of the foreclosure.

---

[31] 12 C.F.R. § 1024.41(g).
[32] 12 C.F.R. § 1024.41(a).
[33] 12 U.S.C. § 2605(f).
[34] *Biles v. Roby*, 2017 WL 3447910, at *4 (Tenn. Ct. App. Aug. 11, 2017) (citing cases).

(18) Sixth, the Motts contend that the Superior Court's judgment should be reversed because the Bank has not acted in good faith, has engaged in unfair dealing, or has unclean hands.[35] Their arguments in support of that contention largely overlap with their other arguments. They do argue that the Bank "use[d] the Dormancy Docket in a way that constitutes bad faith."[36] They seem to offer this argument as further support for their position that the Bank does not hold both the Mortgage and the Note. The dormant docket issue does not change our conclusion with respect to the standing issue. To the extent that the Motts are attempting to make some other argument about the dormant docket, this case was never placed on the dormant docket. Moreover, as a general matter, the placement on the dormant docket of the earlier foreclosure action that was brought by MERS—and the eventual dismissal of that case—does not constitute a defense to a later foreclosure proceeding, because the administrative directive provides that such dismissals are without prejudice.[37]

(19) Seventh, the Motts seek reversal on the grounds that the Bank will receive an unfair windfall in the form of a tax benefit as a result of the foreclosure.[38]

---

[35] Opening Brief, Arguments 14 and 16.

[36] Opening Brief at 20. *See also id.* at 19 ("The timing of the transfers to BONY coinciding with the MERS case being put on the Dormant Docket within hours is shocking. Further the MERS case continued on the Dormant Docket until timing out and being dismissed.").

[37] *See* Del. Super. Ct. Admin. Directive No. 2008-3, ¶ 4 (Oct. 27, 2008) (providing for dismissal "without prejudice" of cases that have been on the dormant docket for at least twenty-four months). *See also* Del. Super. Ct. Admin. Directive No. 2013-4, ¶ 5 (Oct. 10, 2013) (same) (superseding Del. Super. Ct. Admin. Directive No. 2008-3).

[38] Opening Brief, Argument 15.

11

In addition to being raised for the first time on appeal,[39] this argument does not fall within the defenses that are available in a foreclosure action.[40]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The appellants' motion to stay confirmation of the sheriff sale pending this appeal is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[39] *See* DEL. SUPR. CT. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

[40] *See Shrewsbury*, 160 A.3d at 475 (discussing the available defenses to foreclosure).